**WO**
IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Lee Johnson,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV 12-00434-PHX-FJM<br><br>**ORDER** |

The court has before it plaintiff's opening brief (doc. 13), defendant's opposition to plaintiff's opening brief (doc. 14), and plaintiff's reply (doc 15). Plaintiff filed an application for Disability Insurance Benefits in 2009. Her application was denied initially and upon reconsideration and she requested a hearing. An administrative law judge ("ALJ") with the Social Security Administration held a hearing on March 7, 2011, and issued an unfavorable decision. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review.

Plaintiff was born in 1953 and was 56 years old at the date of her alleged onset of disability on July 15, 2009. She has a high school education and previously worked as an office coordinator, switchboard operator, and internal customer service representative. She was fired from her last job for yelling at another employee.

The ALJ followed the required five-step procedure in finding that petitioner was not

1  disabled within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520(a). At
2  step one, the ALJ determined that plaintiff has not performed substantial gainful activity
3  since July 15, 2009. The ALJ found at step two that plaintiff's morbid obesity, diabetes,
4  polymyalgia rheumatica, arthritis, pain in upper extremities, neck, back, and hips, and post
5  right knee replacement surgery were severe impairments. But at step three the ALJ found
6  that plaintiff's impairments did not meet or equal a listed impairment. Next, the ALJ assessed
7  plaintiff's residual functional capacity ("RFC") and found that plaintiff could perform a
8  limited range of sedentary work. The ALJ found at step four that plaintiff is capable of
9  performing her past relevant work. As a result, the ALJ concluded that she is not disabled.

## I

11  We "disturb the denial of benefits only if the decision 'contains legal error or is not
12  supported by substantial evidence.'" Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.
13  2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable
14  mind might accept as adequate to support a conclusion." Id. (internal quotation marks and
15  citation omitted). The "evidence must be more than a mere scintilla but not necessarily a
16  preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "Where evidence
17  is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be
18  upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## II

20  "[W]here the record includes objective medical evidence establishing that the claimant
21  suffers from an impairment that could reasonably produce the symptoms of which he
22  complains, an adverse credibility finding must be based on 'clear and convincing reasons.'"
23  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ
24  found that plaintiff's impairments could reasonably be expected to produce the symptoms
25  alleged. However, he found her statements concerning the intensity, persistence, and limiting
26  effects not credible. An ALJ's credibility determination is entitled to deference. Lingenfelter
27  v. Astrue, 504 F.3d 1028, 1044 (9th Cir. 2007). We will not reverse a credibility
28  determination "based on contradictory or ambiguous evidence." Johnson v. Shalala, 60 F.3d

1428, 1434 (9th Cir. 1995). In weighing credibility, the ALJ may consider failures to seek treatment or follow a prescribed course of treatment, inconsistencies in testimony or between testimony and conduct, and daily activities. Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007).

An unexplained failure to seek treatment or to follow a prescribed course of treatment may support a conclusion that plaintiff is not credible. Id. at 637. Despite testifying that she is frequently in great pain, there is no indication that plaintiff has ever taken prescription medicine for pain and no explanation for why she would not do so or seek other forms of treatment for her pain. See, e.g., Tr. at 217, 239, 322. This diminishes plaintiff's credibility.

One of plaintiff's main activities is making greeting cards, a job which requires great manual dexterity. The ALJ found inconsistencies between plaintiff's testimony and conduct. She testified that she is losing strength in her arms and even answering the phone causes pain, yet she also said that she makes greeting cards daily. The ALJ's determination that this testimony is inconsistent is entitled to deference.

Plaintiff at first testified that she left her last job because she could not drive to work. Upon questioning, though, she admitted that she was fired from that position for yelling at a coworker. She did not lose her job or have to quit because of her impairments. She also continued to look for work after her alleged onset date. While her long work history supports her credibility, being fired and looking for work after the onset date offset this history. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 1998).

Daily activities may be grounds for an adverse credibility determination if they contradict plaintiff's other testimony or meet the threshold for transferable work skills. Orn, 495 F.3d at 639. The ALJ determined that plaintiff "lives alone and her ability to perform activities of daily living are [sic] for the most part normal." Tr. at 26. She goes to a social group regularly to make greeting cards for charity. She drives, goes grocery shopping, does light housework, cares for her cats, reads, watches television, and makes greeting cards. Her activity of making cards is not entirely consistent with her testimony about losing strength in her arms, as noted above. On the other hand, the ALJ did not make specific findings that

1  plaintiff's activities involve transferable skills or that she spends a "substantial" part of her
2  day engaged in such activities. Therefore, daily activities can form the basis of an adverse
3  credibility determination only to the extent they are inconsistent with plaintiff's other
4  testimony. If there was further reliance on daily activities to detract from her credibility it
5  would have been harmless because substantial evidence supports the ALJ's conclusion on
6  credibility. Carmickle, 533 F.3d at 1162-63.

7        Plaintiff received unemployment benefits in 2008 and 2009, which in some cases can
8  negatively impact credibility. See Carmickle, 533 F.3d at 1161-62. But here the benefits
9  were received before her alleged disability onset date. And her testimony was consistent –
10 she stated that her current source of income was savings, and later testified that she had
11 received unemployment benefits in the past. Tr. 39-40, 50-51. To the extent the ALJ relied
12 on her receipt of benefits or an apparent inconsistency about benefits in discounting her
13 credibility, the error is harmless.

14       The ALJ mentioned that although no assistive device was prescribed, plaintiff
15 appeared at the hearing with a walker. Plaintiff truthfully told the ALJ that it had not been
16 prescribed. While her physicians were aware of it, there is no evidence they told her not to
17 use it or stated that it was unnecessary. Plaintiff testified that she uses her walker every time
18 she leaves her house but did not say that she was unable to walk without it. Cf. Verduzco
19 v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (claimant used cane, but two doctors
20 specifically noted that he did not need such a device, and at the hearing he was able to
21 quickly stand and retrieve his wallet from his back pocket without assistance or apparent
22 discomfort). Her use of a walker without a showing of medical necessity is suspicious. The
23 ALJ's determination of plaintiff's credibility is supported by substantial evidence.

### III

25       Plaintiff alleges that the ALJ erred by rejecting the opinions of her treating physician
26 and the state's examining physician and relying on the opinions of non-examining physicians.
27 When the opinion of a treating physician is contradicted, the ALJ may discount it with
28 specific, legitimate reasons that are based on substantial evidence. Bray v. Comm'r of Soc.

- 4 -

1  Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). However, "when evaluating conflicting
2  medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief,
3  conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d
4  1211, 1216 (9th Cir. 2005). A treating physician's opinion may be rejected if it is based to
5  a large extent on plaintiff's subjective complaints and those complaints have been properly
6  discounted. Tommasetti, 533 F.3d at 1041.

7  Dr. Peairs, plaintiff's orthopedist, saw her in March 2009 for an annual follow-up visit
8  three years after total knee replacement surgery of her right knee. After she complained of
9  body aches, he suggested an evaluation with her primary care physician for polymyalgia
10 rheumatica. There is no indication that she did so or has ever been definitively diagnosed
11 with polymyalgia rheumatica. In January 2010, plaintiff returned to Dr. Peairs for a follow-
12 up on her knee. She did not require pain medication for her knee. A history of methicillin
13 resistant staphylococcus aureus ("MRSA") was the main reason for her annual visit. Dr.
14 Peairs completed a pain functional capacity questionnaire in February 2011 in which he
15 concluded that plaintiff had moderately severe pain which frequently interfered with her
16 attention and concentration, and she often experienced deficiencies in concentration,
17 persistence, and pace. Tr. at 364. The ALJ accorded "[l]ittle weight" to this opinion. Tr. at
18 26.

19 The ALJ considers many factors when determining how much weight to give a
20 treating physician's opinion, including length of treatment relationship, frequency of
21 treatment, nature and extent of the treatment relationship, supporting evidence, consistency,
22 and specialization. 20 C.F.R. § 404.1527(c). The ALJ noted that plaintiff's treatment
23 relationship was short and infrequent, as Dr. Peairs treated plaintiff only three times in the
24 year and a half before her hearing. Her visits were specifically to follow up on her knee
25 surgery. See Tr. at 26, 48, 54. There is no supporting evidence for some of the restrictions
26 listed in his opinion. "[T]he regulations give more weight to opinions that are explained than
27 to those that are not." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ
28 may "permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the

bases of their conclusions." Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). Dr. Peairs's opinion is a one-page form with no supporting evidence or explanation. Tr. at 364. Moreover, the opinion was largely based on plaintiff's subjective complaints, which the ALJ properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); Tr. at 54-55. The ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Peairs's opinion.

An examining physician's opinion is given more weight than the opinion of a non-examining physician but may be rejected for specific and legitimate reasons supported by substantial evidence. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Dr. Prieve examined plaintiff in November 2009. He determined that plaintiff could perform a limited range of sedentary work. He opined that she could sit for less than 6 hours, but did not provide a more specific estimate. The ALJ gave great weight to the opinion with the exception of the limit on sitting, which he found was "not supported by the record or Dr. Prieve's own findings." Tr. at 26. He also noted Dr. Prieve reported that plaintiff made a "very poor effort" during the exam and refused to hop when asked. Id. The lack of supporting evidence, inconsistency, and lack of explanation provide specific and legitimate reasons to reject this portion of Dr. Prieve's opinion.

Dr. Rowse and Dr. Goerss reviewed plaintiff's records and completed RFC assessments in December 2009 and April 2010, respectively. They found that plaintiff was capable of performing a range of light to sedentary work. The ALJ gave great weight to the opinions because he found them consistent with the medical evidence. There is no medical evidence supporting plaintiff's contention of disabling pain. She has not sought treatment for generalized pain, nor does it appear that any physician has recommended treatment more extensive than over-the-counter pain medication. The medical records are consistent with the opinions of these physicians, and they are consistent with each other. Moreover, they explained their opinions. Tr. at 227-29, 314-22. The ALJ provided specific and legitimate reasons supported by substantial evidence for giving less weight to Dr. Peairs's opinion and more weight to the findings of these physicians.

**IV**

Plaintiff contends that a sit/stand option is inconsistent with sedentary work. The vocational expert determined that plaintiff could perform her past jobs with the option of sitting or standing at will. The expert testified that there would be some limit as to how often an employee could alternate sitting and standing, but there was no definite limit. All plaintiff's past relevant work could be performed with the option to sit or stand. Her testimony was consistent with the Dictionary of Occupational Titles and her training, education, and experience. The ALJ's RFC is supported by substantial evidence and his reliance on the vocational expert and inclusion of a sit-stand option were not in error.

**V**

Based on the foregoing, we conclude that the ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence in the record. Therefore, **IT IS ORDERED AFFIRMING** the decision of the Commissioner denying disability benefits. The clerk shall enter final judgment.

DATED this 11th day of October, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge